(Cuyahoga County, Court of Common Pleas.)

## THE CITY OF CLEVELAND v. THE CLEVELAND ELECTRIC R. R. CO.

On the 22nd day of July, 1875, the City of Cleveland, by ordinance, granted to the
Broadway & Newburg St. R. R. Co., a corporation, the privilege of construct-
ing and maintaining a street railway in the street of Broadway in said city.
Among other conditions were this, that the company should pave, or pay for
the paving of, the space between its rails making for a double track 10 feet.
Subsequently, and while the grant was still in force, the city, by ordinance
passed December 22nd, 1892, undertook, and did require the street railroad
company to pave 16 feet of the street instead of 10 feet.

*Held,* that under section 2 of Article 1, of the Constitution of. Ohio, as well as the act of the legislature passed April 21st, 1890, and the ordinances of the city passed prior to December 22nd, 1890, the ordinance of December 22nd, 1890, and the ordinance of June 13th, 1892, and the act of the legislature of April 21st, 1890, were all valid and constitutional, and the right of the city to require the company to pave 16 feet instead of 10 feet did exist, and it was but a reasonable exercise of the reserved power under the constitution of the state and the ordinances of the city.

---

ONG, J. (orally.)

The case of The City of Cleveland v. The Cleveland Electric Railway Co., was at the last term of this court tried to the court, jury being waived the question being entirely, or almost entirely, one of law.

The petition of the city avers substantially, that it is a municipal corproration organized under the laws of the state of Ohio, and a city of the second grade of the first class; that the defendant is a corporation organized under the laws of Ohio, being a street railroad company formed on or about the 1st day of April, 1893, by the consolidation as provided by the statutes of the state, of The Broadway & Newburg Street R. R. Co., The East Cleveland R. R. Co., and The South Side R. R. Co., each of which were incorporated railroad companies at, and prior to, such consolidation, and each owned and operated various lines of street railway in the city of Cleveland, in pursuance of ordinances passed by the council of said city at various times.

The defendant, The Cleveland Electric R. R. oC., as the successor of the several companies, is now, and has been since the consolidation, operating all of the lines of said railroad companies, and is liable to perform all the obligations of said constituent companies in respect thereto.

The City further says that on the 22nd day of July, 1875, the council of the city passed an ordinance granting permission to the Broadway & Newburg Street R. R. Co. to construct and operate a street railroad, with the necessary turnouts, etc., in the city of Cleveland, commencing on Union street on Broadway, running south on Broadway to Mechanic street, now Miles Park avenue, for and during the period of twenty years from and after the 27th day of July, 1875, subject to the conditions and limitations set forth in the ordinance, among which are, "a railroad should consist of two tracks over certain portions of the territory above named;" and that "the company should be required to pay for the paving of the same with material as the rest of the street is paved with, and the space between the rails of each of its tracks and turn-outs; that such paving by the company should be done to the satisfaction of the board of improvements, and that in case of failure or neglect on the part of the said company to perform all and singular the conditions of the ordinance, together with all and singular the further and future ordinances of the council in relation to said road, then the privileges granted should become null and void, etc."

The city futher says that said railroad company, The Broadway & Newburg St. R. R. Co. accepted the conditions of said grant, and constructed a railroad in Broadway under and in pursuance of the ordinance.

It futher says that on the 15th day of October, 1883, the council passed an ordinance permitting the company to extend its lines over certain territory named in the petition, and provided for the compliance with that ordinance, as well as all conditions of the former ordinance making the grant. Then the plaintiff says that on the 1st day of July, 1889, the council of the city passed an ordinance granting permission to the Broadway & Newburg St. R. R .Co., to operate its entire line of street railroad, and all extensions, by electricity as a motor power, and said grant should terminate twenty-five years from and after the passage of the ordinance.

The ordinance further provided that nothing contained therein should in any wise release, or relieve said ompany from compliance with all other ordinances relating to said railroads then in force, or which might thereafter be adopted by the city council, including all amendments hereto and thereto; that again, on the 20th day of January, 1890, the city council, by ordinance, granted permission to said Broadway & Newburg St. R. R. Co. to lay an additional track on Broadway, and to maintain the same and any extension thereof; and that such grant should expire with the grant passed July 1st, 1889, and provided that the company should comply with all the provisions and conditions, of former, as well as the present ordinance, in relation to street railroads.

Further, on the 4th day of December, 1866, the council of said city passed an ordinance prescribing the terms and conditions of street passenger railways within the City of Cleveland, and sets forth in its petition Sections 1, 13 and 17 of such ordinance, which are general in their nature, and section 1 provides "that all companies or individuals laying down railroads in a street of the city shall be guided, governed and regulated by the following conditions and such restrictions as the council may thereafter pass."

Section 13 provides "that the companies shall perform all and singular the conditions of the ordinance, together with all and singular the further and future orders of the council in relation to said railroad."

Section 17 makes the entire act applicable to all street railroads within the city. And further, that the City Council passed an ordinance on the 24th day of January, 1881, amending and repealing certain ordinances, but still provided therein, "that all railroad companies or individuals laying or operating railroads within the City of Cleveland, should not only be subject to the conditions of the ordinance, but all and singular, future and further orders of the council in relation to such railroads."

The petition further avers that the Broadway & Newburg St. R. R. Co. accepted the provisions of the several grants made to it, and accepted the same subjcet to the terms and conditions thereof, and subject also to the provisions of said general ordinances of the city upon that subject; that since the consolidation of the companies as heretofore referred to the defendant company has owned and operated this particular line of road; that all of the ordinances were duly published as required by law; that in the grants under which the Broadway & Newburg St. R. R.. Co. built and constructed its railroads, it was provided that it should pave, or pay for the paying of, the space bewteen its rails.

The plaintiff further says, that on the 22nd day of December, 1890, the council of the city passed an ordinance to amend Section 981, of the revised ordinances of the City of Cleveland, relating to street railroad companies, which ordinance was duly published, and took effect in 10 days thereafter, and in and by said ordinance it was provided "that any individual, company or corporation to whom the privileges of this chapter have been, or may be granted by the city, shall be required to pave and keep in constant repair 16 feet for a double track, or 7 feet for a single track, all of which pavement shall be of the same material as the balance of the street is paved with, and shall be done to the acceptance of the board of improvements."

Again, on the 13th day of June, 1892, the council of the city passed an ordinance entitled, "An ordinance to drain, pave, curb and improve Broadway from the west curb line of Union Street to the southeasterly line of Miles Avenue," which ordinance was duly published, requiring the street to be paved with dressed block Medina sand stone, and improved in accordance with the grades, plans and profiles, etc., on file in

VOL. 1—40*

the chief enigneer's office, and that the Street Railroad Company owning and operating any street railroad upon any portion of said street between the points aforesaid should grade, pave and improve at its own expense a space 7 feet in width for a single track, and 16 feet in width for a double track, the work to be done under the direction, and to the satisfaction of the board of control of the city."

The city further says, that in pursuance of said ordinance, all the steps to be taken on the part of the city precedent and subsequent thereto, have been duly taken and performed, and that the defendant,, although duly notified by the board of control and the director of public works, wholly refused and failed to pave any part of said street, excepting between the rails of its tracks being 10 feet in width on said street between the points named in the ordinance; and that by reason of the premises, said defendant was also required to pave in addition thereto the space between its two tracks, commonly called the "Devil's Strip," and one foot outside of the outer rail of each of its tracks, making in all 16 feet in width of said street between the points named in said ordinance, and that by reason of the failure of the defendant to comply with the ordinances of the city in that regard it was compelled to, and did pave at its own expense, the space between the tracks of said company, commonly called the "Devil's Strip," and one foot in width outside the outer rail of each of said tracks between the points named, which work it completed before the 13th day of February, 1884."

The city further says, that for paving said space between said tracks, it expended and paid the sum of $11,016.14, and for paving said one foot in width outside the outer rail of each of said tracks it paid $5,332.37, making in all the sum of $16,448.20, for which amount it asks judgment against the defendant.

Such is the claim substantially as set forth by the City of Cleveland, to which claim the defendant files answer, and admits the corporate capacity of the plaintiff and itself; admits the consolidation of certain street railway companies; and among others the Broadway & Newburg St. R. R. Co., admits that it is bound and obligated by the same contracts and duties that the Broadway & Newburg St. R. R. Co. was prior to the consolidation; admits the construction of a railroad from Union Street to Miles Avenue, and says that it was under and by virtue of a contract with the City of Cleveland whereby said Broadway & Newburg St. R. R. Co. agreed to, and did pay for the paving between the rails of its tracks.

The defendant further says that that did not include the "Devil's Strip," nor any space outside of the rails between the points named. That such contract has been recognized by the city, and the defendant is at all times ready and willing to perform its contract, and has performed the same, which contract is fully embraced by the ordinance passed by the proper authority of the City of Cleveland, and accepted by the Broadway & Newburg St. R. R. Co. It denies that its contract has been in any respect changed by any proper authority, and that the contract existed at the time the paving mentioned in plaintiff's petition was done, and that it paid for its portion thereof, and is not indebted in any sum to plaintiff therefor; and then denies each and all allegations in plaintiff's petition contained not in its answer admitted, and asks to go hence with its costs.

It will be observed upon the statement of the issues as set forth by the petition and answer, that the question is largely, and in this case altogether, one of law. The question was fully heard by this branch of the court at the last term, and was extensively and very ably argued on both sides, and I am frank to say, has given to the court more concern and labor than any question that has been submitted to me during my services

upon the bench, and if I have correctly solved the problem, it has only been accomplished after a thorough examination of all authorities cited by counsel on both sides, as well as many examined by the court on its own motion.

The facts as to the amount of paving and the price of paving done by the city that it claims the defendant should pay for, are not disputed; that all the ordinances referred to and set forth in the petition were lawfully and legally passed, and the corporate capacity of both parties to the action, is not in controversy.

The question, therefore, arises upon the right of the city under the ordinances referred to, and by the ordinance of December 22, 1890, and June 13, 1892, to impose upon the defendant or the Broadway & Newburg St. R. R. Co. the further burden of paving, or paying for the paving of the space between its tracks commonly called the "Devil's Strip," and being four feet in width, together with one foot on the outside of the outer rail of its tracks. Such a right the plaintiff insists on its part does exist; whilst the defendant contends that no such power resides in the municipality, for the reason that its contract, or the contract of the Broadway & Newburg St. R. R. Co., under all the ordinances or grants made by the city prior to, and up to December 22, 1890, required only of the Broadway & Newburg St. R. R. Co. that it would pave the space between its tracks; that it accepted its franchise, built its road, has and still does maintain the same upon the express condition and contract relation that that was all the space to be by it paved and kept in repair or paid for; and it contends that any attempt, either on the part of the legislature through the City of Cleveland, or by either body direct, to impose the further burden of paving sixteen feet, is to impair its contract obligation, and, therefore such act or attempt by ordinance, or by the legislature, is wholly null and void, and in violation of the defendant's constitutional rights.

This brings us to the consideration at once of the ordinances of the city, statutes of the state, and the constitutional reservation upon the subject of corporate powers, or charters.

I first desire to say, however, that several terms ago substantially the same question was presented to another branch of this court, to-wit, Judge Hamilton, which arose upon a question entirely different from the one made here. In that case an application was made for injunction; and in passing upon that application the judges met and considered the question pending in this action, but it was not the leading question of the case. But so far as any holding was made upon the subject, it was to the effect that it was an impairment of the contract obligations, and therefore such additional burdens could not be imposed, although I am frank to say, were the same application now pending before me for injunction, I would feel constrained to do and hold as Judge Hamilton did in reference to the injunction. The question, however, being made and presented in this case, I have consulted with Judge Hamilton, and after a careful examination of the entire subject, I may say that I think he is substantially in accord with the opinion in this case. *

It will be observed that under the ordinances of the City of Cleveland passed on the 4th day of December, 1866, the provisions of Section 13 were to the effect, and in express language provided that any individual or company to whom was granted the privilege of laying down rails for running street passenger cars, to be drawn by horses or mules through the streets of the City of Cleveland, should perform all and singular the conditions of the general ordinance, together with all and singular the future and further orders of the council in relation to said street railroads. Also

by the terms and conditions of the grant made to the Broadway & New-burg St. R. R. Co. on July 27th, 1875, wherein it was specifically provided that the company should pave the space within the rails of each of its tracks and turn-outs, whenever the City Council should deem it necessary, etc.; that the company would peform all and singular the conditions of that ordinance, together with all and singular further and future orders of the council in relation to said railroad, and if they failed to do so, then the privilege should be null and void.

Again, by the ordinance of the 15th of October, 1883, the same provisions were set forth in said ordinance with reference to the extensions therein provided for. That grant ran for a period of twenty years, but in accordance with the holding of our Circuit Court in the case of the State, ex rel. etc., v. The East Cleveland Railroad Co., 6 C. C. 318, it was held that it was "within the power of a street railroad company, and the City Council, by agreement, to terminate the first grant at any time previous to its expiration, when there was good cause for so doing, and to renew the grant for any period not in excess of the limitation fixed by statute."

Hence the ordinance of July 1st, 1889, granting permission to the Broadway & Newburg St. R. R. Co. to operate its entire lines and extensions by electricity for a period of twenty-five years, included a nd imposed upon the railroad company the same burdens and contract obligations that existed under the original grant, together with the stipulation that nothing in the ordinance of July 1st, 1889, should in any wise release or relieve the company from compliance with all other ordinances relating to street railroads then in force, or which might thereafter be adopted by the City Council, including all amendments hereto and thereto. So the railroad company was operating its road at the time the city undertook by ordinance to increase its burdens under the ordinance of July 1st, 1889. That being true, the only requirement at that time or at any time of the railroad company with reference to paving was that it should pave the space within the rails of its tracks.

On the 21st day of April, 1890, the legislature of Ohio, then in session, provided by statute as follows as an amendment to Section 2,504 of the Revised Statutes.

"That in cities of the second grade of the first class the council may require of any street railroad company to pave and keep in constant repair sixteen feet for a double track or seven feet for a single track, all of which pavement shall be of the same material as the balance of the street is paved with." After the passage of this act the City Council enacted the ordinances of December 22, 1890, and June 13th, 1892, and by the ordinance of December 22nd, 1890, predicated upon the act of the legislature of April 21st, 1890, it provided, "that any individual, company or corporation to whom the privileges of this chapter have been, or may be granted by the city, shall be required to pave and keep in constant repair, sixteen feet for a double track, or seven feet for a single track, all of which pavement shall be of the same material as the balance of the street is paved with, whenever the City Council shall so order, etc."

Now, it is contended as I have said, that the ordinance just referred to of December 22nd, 1890, undertakes to impose a greater burden than that provided for by the original grant or contract between the railroad company and the city, and therefore impairs the obligation of its contract, and is void and of no effect. In the examination of this question, I have carefully canvassed all the authorities referred to by counsel, as well as many found and examined by the court, and among others referred to by counsel is that of the 138 U. S. Reports, page 98. The case

of Sioux City Street R. R. Co. v. Sioux City, submitted to the Supreme Court of the United States, and decided January 26, 1891, the syllabus of which case is as follows: "On December 12th, 1883, the City of Sioux City in Iowa, by ordinance, conferred on a street railroad company, incorporated December 6, 1883, under the general laws of Iowa, the right of operating a street railway with the requirement that it should pave the street between the rails." Subsequently, under an act of 1884, the city, by ordinance, required the company also to pave the street for one foot outside of the rails, and assessed a special tax against it for the cost of the paving outside of the rails. Held, that there was no contract between the company and the state or the city, the obligation of which was impaired by the laying of the tax." Under Section 1,090 of the Code of Iowa, which was in force when the company was incorporated, its franchise was subject to such conditions as the legislature should thereafter impose as necessary for the public good.

Justice Blatchford, after stating the case, delivered the opinion of the court, and without quoting the entire opinion, the judge says that the company took its franchise subject to such legislation as the state might enact, which is plain from the provisions of Section 1,090 of the code. The company took its charter subject to the provisions of that section. Under Section 1,090 of the Iowa Code, the legislature had the power, not only to repeal and amend the articles of incorporation of the company, but to impose any conditions upon the enjoyment of its franchise, which the general assembly might deem necessary for the public good. The reservation of this power was a condition of the grant. The judge further says: "Moreover, the city derived from the state alone its power to grant a license to the company; the right to operate a railway in the streets is a franchise obtained through power given to the city by the state, but the state reserves the power to regulate and impose conditions upon it. It reserves the power to determine the question of the exemption of the company from taxation, and to prescribe what burdens should be imposed upon it for the public good in the enjoyment of its franchise, and the case is not changed by the fact that the franchise was granted by the city." And then he says, "No question can arise as to the impairment of the obligations of a contract when the company accepted all of its corporate powers, subject to the reserve power of the state to modify its charter, and to impose additional burdens upon the enjoyment of the franchise."

It may well be said, however, in this case, that the state under the code reserved to itself the right to exercise the power of imposing further burdens, and that Section 1,090 of the code being in existence at the time of the original grant to the company, was read into the contract or grant, and became a part thereof, and therefore it did reserve to itself, the legislature, the right to require the further duty or burden of paving one foot on the outer side of each rail of its track.

We do not think that this case is on all fours with the one at bar, and yet the principles enunciated in this decision by the highest tribunal in this, or any other country, would seem to rest upon the doctrine that when the railroad company accepted its franchise, it accepted it under the then existing provisions of the Code of Iowa, and could not be heard to say that when the legislature undertook to exercise that reserve power, that it was impairing the contract of which the reserve power was itself a part. It is true that we have no such code provision, but we do have in the organic law of the state, a provision that is equally as broad, and by a construction given it by the Supreme Court of the United States, even broader in its meaning and scope than the language used in the Iowa

Code. I refer to Section 2 of Article 1 of the bill of rights, which provides all political power is inherent in the people ; government is instituted for their equal protection and benefit, and they have the right to alter, reform or abolish the same whenever they may deem it necessary, and no special privileges or immunities. shall ever be granted that may not be altered, revoked or repealed by the general assembly."

Under the constitution then of 1851, the act or charter of the incorporation of the Broadway & Newburg St. R. R. Co. was granted and read into it, and as a part thereof was the reserved power in the people of the state to do what? To alter, revoke or repeal its charter. This, however, means the exercise of that reserve power always in a reasonable manner and never arbitrarily. How do the people enforce this reserve power thus provided for in the constitution? Clearly through its legislators; and the legislature. in part, not only grants, as in the case at bar, privileges to corporations and individuals through the different municipalities of the state, but it, by direct acts, authorizes the .municipalities to perform and do all things that the city may lawfully do in the way of municipal or self government. Hence the legislature of Ohio, on the 21st day of April, 1890, by act, said to the authorities of the City of Cleveland, that by virtue of the reserve power under the constitution of the state, and by virtue of the power vested in the legislature, it might under and in keeping with the power so reserved under the constitution, require of the Broadway & Newburg St. R. R. Co. the paving of sixteen feet of the street in which it operates its railroad, instead of ten feet as originally named in the ·original grant, for the reason that when they received their charter of incorporation, and, further when they accepted all the privileges that had been granted them, they expressly agreed that they accepted the same. subject, not only to the provisions of the constitution on that subject, but subject to the express language of the ordinances as provided therein.

It is now contended by the defendant that because of the exercise of this power by the legislature, or by the legislature through the City of Cleveland by its ordinances, it is an impairment of the very contract of which the constitutional reservation, as well as all the ordinances are read into, and made a part. thereof. We think, upon reasoning, the authorities conclusive that such a position on the part of the railroad company is not tenable. If it is contended that the language used in the constitution is not sufficiently broad, or the language used in the ordinances creating the reservations, then I call attention to the language of the Supreme Court of the United States upon that subject found, in Volume 146, page 269, wherein the Supreme Court says, "that by the constitution of Ohio, adopted in 1851, it was declared that no special privileges or immunities shall ever be granted that cannot be altered, revoked or repealed by the General Assembly."

Further on, Justice Harlan, delivering the opinion, speaking of the reserved power in the statutes of Massachusetts which provide "that every act of incorporation passed after a named day, shall be subject to amendment, alteration or repeal at the pleasure of the legislature," the court says the words "at the pleasure of the legislature" are not in the clause of the constitution of Ohio, or in the statutes to which we have referred, but the general reservation of the power to alter, revoke or repeal the grant of special privileges, necessarily implies that the power may be exercised at the pleasure of the legislature.

Hence, if I am right in the conclusion reached, and the construction given to the act of the legislature and the ordinances of the City of Cleveland, there is but one question remaining, and that is: was the legislature

of Ohio authorized, and did it have power to authorize the City of Cleveland, by act, to impose the additional burden referred to in this case ?

This question gave to the court a good deal of consideration, and a great deal of examination of authorities upon that subject, but a careful study and review of the authorities convinces me that the legislature of Ohio had the right by statute directly to impose this burden upon the Broadway & Newburg St. R. R. Co., or it had the right, as it did, to authorize the municipality of the City of Cleveland to impose that burden, it, the City of Cleveland, having granted the privilege by authority from the state, and the defendant company having accepted the privileges, that the reservation not alone in the constitution, but in the ordinance itself, was that the state could, and it did, by and through the City of Cleveland, lawfully impose the burden. And on this subject I refer to the 18th Ohio State Reports, page 298, in the case of the State, ex rel. etc. v. The Cincinnati Gas Light & Coke Co. Judge Scott delivering the opinion, says: "That the defendant's charter is a special one granted in 1837, and contains a provision expressly subjecting it to alterations, modifications or repeal by any future legislation." This, of course, was before the constitution of 1851. The judge says: "It is claimed on behalf of the defendant that the reserved power of alteration, modification or repeal can be exercised only by the legislature, and cannot be delegated to a City Council." In further referring to the question, he says, "It is the legislative act which prescribes the rule of corporate action, though the City Council is made an agent in its administration." And in the syllabus of the same case it is said, "The right of such use of the public streets of a city is a franchise, and must emanate either directly or indirectly from the legislature." So, also, in the case of the 138th U. S. Reports, it will be observed, "that the City Council, by ordinance, required and imposed the additional burden of paving one foot outside the rail." And in that case the city granted to the street railway company the privilege of laying its tracks in the street. Hence, on this question I have no doubt that the legislature of Ohio could just as well impose this burden through the City of Cleveland through which the privilege had been granted, as to do it itself direct.

And I desire to say again, referring to the opinion of Judge Hamilton, that the decision in the 138th U. S. Reports has been made since the holding of Judge Hamilton upon this subject; and in view of that case and others brought to the attention of the court, it is but fair to him whose opinions rank among the first in the state to say, that after consultation, he is not dissenting from the opinion herein delivered; and I am disposed to, and do hold that whilst the contract relation between the Broadway & Newburg St. R. R. Co. and the City of Cleveland did exist, that under the constitution of the state under the act of the legislature of 1890, the ordinances passed by the City Council of December 22nd, 1890, and June 13th, 1892, are valid and subsisting ordinances, and neither the act of the legislature, nor the ordinances, impair the obligation of the contract existing, and the requirement of the ordinance of December 22nd, 1890, is a reasonable one.

The finding and judgment of the court, therefore, is in favor of the City of Cleveland, and judgment is rendered against the defendant, and in favor of the plaintiff for the sum of $16,448.21, with interest from the 13th day of February, 1894.